# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Dr. Ted Iseghohi Edwards, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:23-cv-01129 (CKK) |
| v. | ) | |
| | ) | |
| Federal Government of Nigeria, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL AND MINISTER OF JUSTICE OF NIGERIA, AND DEBT MANAGEMENT OFFICE OF FEDERAL REPUBLIC OF NIGERIA IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.    The Court Lacks Jurisdiction Over Plaintiffs' Claim .................................. 2

      A.    Defendants are Entitled to Immunity from Suit Under the FSIA ...............2

      B.    None of the FSIA's Exceptions to Immunity Allows the Court to
             Exercise Jurisdiction .....................................................................................7

II.    Even if Nigeria Is Not the Real Party in Interest, the Claim Against Nigeria's
      Attorney General and Minister of Justice Should Still Be Dismissed ................... 9

      A.    There is No Personal Jurisdiction Over Nigeria's Attorney General
             and Minister of Justice ..................................................................................9

      B.    Nigeria's Attorney General and Minister of Justice is Entitled to
             Common Law Foreign Official Immunity ...................................................11

III.    The Complaint Must Be Dismissed Under the Doctrine of *Forum Non
      Conveniens* ........................................................................................... 12

      A.    Nigeria Is an Adequate Forum .................................................................12

      B.    The Private Interest Factors Weigh in Favor of Dismissal ......................12

      C.    The Public Interest Factors Weigh in Favor of Dismissal ........................14

IV.    Plaintiffs Failed to Comply with the FSIA's Service Requirements ...................... 15

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Adler v. Federal Republic of Nigeria*,
107 F.3d 720 (9th Cir. 1997) ................................................... 3

*African Growth Corporation v. Republic of Angola*,
No. 17-2469 (BAH), 2019 U.S. Dist. LEXIS 120571 (D.C.C. 2019) .................................... 11

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
528 F.3d 934 (D.C. Cir. 2008) ................................................ 12

*Alberti v. Empresa Nicaraguense de la Carne*,
705 F.2d 250 (7th Cir. 1993) ................................................. 18

*Angellino v. Royal Family Al-Saud*,
681 F.3d 463 (D.C. Cir. 2012) ............................................... 16

*\*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) ....................................................... 3, 8

*Atl. Tele-Network, Inc. v. Inter-American Dev. Bank*,
251 F. Supp. 2d 126 (D.D.C. 2003) ........................................... 9

*\*Barot v. Embassy of Zambia*,
785 F.3d 26 (D.C. Cir. 2015) ............................................. 16, 17

*Belize Soc. Dev*., *Ltd. v. Government of Belize*,
794 F.3d 99 (D.C. Cir. 2015) ................................................ 3

*Ben-Rafael v. Islamic Republic of Iran*,
540 F. Supp. 2d 39 (D.D.C. 2008) ........................................... 16

*Betz v. Aidnest*,
No. 1:18-cv-00292 (KBJ/GMH), 2018 U.S. Dist. LEXIS 183982 (D.D.C.
2018) ..................................................................... 10

*\*BPA Int'l, Inc. v. Sweden*,
281 F. Supp. 2d 73 (D.D.C. 2003) ........................................... 13

*\*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................................................... 10

*Doe v. Buratai*,
318 F. Supp. 3d 218 (D.D.C. 2018) .......................................... 11

*Dogan v. Barak*,
  No. 15-08130, 2016 U.S. Dist. LEXIS 142055 (C.D. Cal. Oct. 13, 2016)............................12

*Eie Guam Corp. v. Long Term Credit Bank of Japan*,
  322 F.3d 635 (9th Cir. 2003) .........................................................................................3

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*,
  894 F.3d 339 (D.C. Cir. 2018) .......................................................................................3

*Fluoroware, Inc. v. Dainichi Shoji K.K.*,
  999 F. Supp. 1265 (D. Minn. 1997) ............................................................................14

*Garb v. Republic of Poland*,
  440 F.3d 579 (2d Cir. 2006).............................................................................................5

*Gonzalez v. Naviera Neptuno A.A.*,
  832 F.2d 876 (5th Cir. 1987) .......................................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)......................................................................................................10

*Heping Li v. Keqiang Li*,
  No. 20-2008 (JMC), 2023 U.S. Dist. LEXIS 60329 (D.D.C. 2023)..........................6

*Hueter v. Kruse*,
  610 F. Supp. 3d 60 (D.D.C. 2022) ........................................................................13, 15

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)......................................................................................................10

*Inversora Murten, S.A. v. Energoprojekt Holding Co.*,
  671 F. Supp. 2d 152 (D.D.C. 2009) ..............................................................................9

*Irwin v. WWF, Inc.*,
  448 F. Supp. 2d 29 (D.D.C. 2006) ..........................................................................13, 14

*Iseghohi-Edwards v. Federal Government of Nigeria*,
  Case No. 18-mc-91146 (D. Mass.) ................................................................................1

*Iseghohi-Edwards v. Federal Government of Nigeria*,
  No. 18-MC-91146, 2018 U.S. Dist. LEXIS 95299 (D. Mass., May 11, 2018) ........1

*Iseghohi-Edwards v. Federal Government of Nigeria*,
  Case No. 1:8-cv-11133-FDS (D. Mass)........................................................................1

*Iseghohi-Edwards v. Federal Government of Nigeria*,
  No. 1:8-cv-11133-FDS, 2018 U.S. Dist. LEXIS 212827 (D. Mass., December
  18, 2018) ...................................................................................................................1, 6

*Ivanenko v. Yanukovich,
  995 F.3d 232 (D.C. Cir. 2021) .......................................................................8, 9

Kentucky v. Graham,
  473 U.S. 159 (1985).........................................................................................5

Manouchehr Mohammadi v. Islamic Republic of Iran,
  947 F. Supp. 2d 48 (D.D.C. 2013) ..................................................................7

*MBI Grp., Inc. v. Credit Foncier du Cameroun,
  558 F. Supp. 2d 21 (D.D.C. 2008), aff'd 616 F.3d 568 (D.C. Cir. 2010)...................12, 13, 15

McDonald's Corp. v. Bukele,
  960 F. Supp. 1311 (N.D. Ill. 1997) ................................................................14

Miango v. Democratic Republic of Congo,
  No. 15-1265 (ABJ), 2020 U.S. Dist. LEXIS 113722 (D.D.C 2020) ......................................11

Nikbin v. Islamic Republic of Iran,
  471 F. Supp. 2d 53 (D.D.C. 2007) ................................................................17

*Odhiambo v. Republic of Kenya,
  930 F. Supp. 2d 17 (D.D.C. 2013) ..................................................................6

Owens v. Republic of Sudan,
  864 F.3d 751 (D.C. Cir. 2017) ........................................................................7

Phoenix Consulting, Inc. v. Republic of Angola,
  216 F.3d 36 (D.C. Cir. 2000) ..........................................................................7

Piper Aircraft Co. v. Reyno,
  454 U.S. 235 (1981).......................................................................................12

*Republic of Argentina v. Weltover, Inc.,
  504 U.S. 607 (1992).......................................................................................16

Roeder v. Islamic Republic of Iran,
  333 F.3d 228 (D.C. Cir. 2003) ........................................................................4

*Samantar v. Yousuf,
  560 U.S. 305 (2010).....................................................................................5, 11

Sampson v. Fed. Republic of Germany & Claims Conf.,
  250 F.3d 1145 (7th Cir. 2001) ........................................................................9

*Saudi Arabia v. Nelson,
  507 U.S. 349 (1993).......................................................................................3

iv

*Schansman v. Sberbank of Russ. PJSC*,
No. 1:19-CV-02985 (ALC)(GWG), 2022 U.S. Dist. LEXIS 219959
(S.D.N.Y., 2022) ............................................................................................................5

*SI Group Consort Ltd. v. Ukraine, Ivano-Frankivsk State Admin*,
No. 15 CV 3047-LTS, 2017 WL 398400 (S.D.N.Y. Jan. 30, 2017)...........................................9

*\*Tatneft v. Ukraine*,
301 F. Supp. 3d 175 (D.D.C 2018) ........................................................................................12

*TIG Ins. Co. v. Republic of Argenina*,
No. 18-mc-00129 (DLF), 2022 U.S. Dist. LEXIS 151663 (D.D.C. 2022)..........................8, 9

*\*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
30 F.3d 148 (D.C. Cir. 1994) ......................................................................................4, 5, 15, 17

*UAB Skyroad Leasing v. OJSC Tajik Air*,
No. 21-7015, 2022 U.S. App. LEXIS 16977 (D.C. Cir. 2022)..............................................11

*Walden v. Fiore*,
571 U.S. 277 (2014).............................................................................................................11

*Williams v. Romarm S.A.*,
756 F.3d 777 (D.D.C. 2014) ..................................................................................................10

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
296 F.3d 1154 (D.C. Cir. 2002) ..........................................................................................8, 9

**Statutes**

28 U.S.C. § 1330(a) ...........................................................................................................15

28 U.S.C. § 1330(b) ...........................................................................................................16

28 U.S.C. §§ 1602, *et seq*..................................................................................................2

28 U.S.C. § 1603(a) .............................................................................................................3

28 U.S.C. § 1604..................................................................................................................3

28 U.S.C. § 1605..................................................................................................................3

28 U.S.C. § 1605(a)(1).....................................................................................................2, 7, 8

28 U.S.C. § 1606..................................................................................................................3

28 U.S.C. § 1607..................................................................................................................3

28 U.S.C. § 1608................................................................................................................16

28 U.S.C. § 1608(a) ...............................................................................................15, 16, 17

28 U.S.C. § 1608(a)(1) ......................................................................................................17

28 U.S.C. § 1608(a)(2) ......................................................................................................17

28 U.S.C. § 1608(a)(3).........................................................................................2, 15, 17

28 U.S.C. § 1608(a)(4) ......................................................................................................17

D.C. Code § 13-423(a)(1)-(4) ...........................................................................................10

**Rules and Regulations**

Federal Rule of Civil Procedure 12(b)(5) ........................................................................15

**Legislative Authorities**

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604 .......................................15

**Foreign Authorities**

Nigerian Debt Management Office Establishment Act (2003)....................................................4, 5

## INTRODUCTION

Defendants the Federal Government of Nigeria, the Attorney General and Minister of Justice of the Federal Republic of Nigeria, and the Debt Management Office of the Federal Republic of Nigeria (collectively, "Nigeria" or "Defendants"), submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss the Complaint of Plaintiffs Ted Iseghohi-Edwards and Boston Legal Partners Corporation (collectively, "Plaintiffs").

This is not the first time that Plaintiff Edwards has attempted to sue Nigeria and its officials in the United States.  On April 17, 2018, he filed a request for "Registration of a Judgment" in the U.S. District Court for the District of Massachusetts seeking monies allegedly owed to him by Nigeria.  *Iseghohi-Edwards v. Federal Government of Nigeria*, Case No. 18-mc-91146 (D. Mass.). The district court dismissed the action without prejudice on May 1, 2018 for lack of subject matter jurisdiction and failure to state a claim.  *Iseghohi-Edwards v. Federal Government of Nigeria*, No. 18-mc-91146, 2018 U.S. Dist. LEXIS 95299, at 11 (D. Mass., May 11, 2018).

Undeterred, Edwards filed another action on May 30, 2018.  *Iseghohi-Edwards v. Federal Government of Nigeria*, Case No. 1:8-cv-11133-FDS (D. Mass)  On December 18, 2018, the district court dismissed that action with prejudice for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").  *Iseghohi-Edwards v. Federal Government of Nigeria*, No. 1:8-cv-11133-(FDS), 2018 U.S. Dist. LEXIS 212827, at 7-13 (D. Mass., December 18, 2018).

In yet another attempt, Plaintiffs filed the present Complaint on April 24, 2023.  D.E. 1, at 7-8.  This time, Plaintiffs put before the Court a dispute with Defendants regarding an alleged promissory note purportedly charged upon the general assets of Nigeria and issued to Plaintiff Edwards by the Debt Management Office on behalf of Nigeria's Federal Government.  D.E. 1-1,

Exhibit A, at 1.  The Complaint further alleges that Boston Legal Partners Corporation is the custodian of the promissory note "due to ongoing third party transactions."  D.E. 1-1, Exhibit A, at 3.

Plaintiffs' action fares no better the third time around.  *First*, each of the Defendants qualifies as a foreign state for purposes of the FSIA.  The Court should therefore dismiss the action because none of the exceptions to immunity set out in the FSIA applies.  28 U.S.C. §§ 1602, *et seq*.  The only exception invoked by Plaintiffs—the waiver exception found in § 1605(a)(1)—is inapplicable because the alleged promissory note contains no express waiver of immunity and Defendants have not otherwise impliedly waived immunity.

*Second*, even if the Complaint could be construed as asserting a claim against Nigeria's Attorney General and Minister of Justice personally rather than against the Nigerian state (it cannot), dismissal is still required because he lacks sufficient minimum contacts with the forum to permit the exercise of personal jurisdiction and, in any event, he would be immune under the common law of foreign official immunity.

*Third*, even if the Court had jurisdiction (it does not), the action—which concerns a putative Nigerian promissory note issued in Nigeria by the Government of Nigeria and governed by Nigerian law—should be dismissed under the doctrine of *forum non conveniens*.

*Finally*, dismissal is required because Plaintiffs failed to serve Defendants in the manner required by § 1608(a)(3) of the FSIA.

## ARGUMENT

### I.     The Court Lacks Jurisdiction Over Plaintiffs' Claim

#### A.     Defendants are Entitled to Immunity from Suit Under the FSIA

The Complaint must be dismissed for lack of subject matter jurisdiction.  As an initial matter, Plaintiffs are mistaken to assert, D.E. 1 at 3, that the Court has diversity jurisdiction.  "In

passing the FSIA, Congress removed foreign sovereigns from the diversity category altogether…

FSIA jurisdiction is its own special kind of federal jurisdiction and was intentionally divorced

from diversity jurisdiction." *Eie Guam Corp. v. Long Term Credit Bank of Japan*, 322 F.3d 635,

647 (9th Circ. 2003).

It is thus black letter law that the FSIA provides the sole basis for obtaining jurisdiction

over a foreign sovereign in the federal and state courts of the United States. *Saudi Arabia v.*

*Nelson*, 507 U.S. 349, 355 (1993) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*,

488 U.S. 428, 433 (1989)); *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d

339, 344 (D.C. Cir. 2018).  Section 1604 of the FSIA states the bedrock presumption of foreign

sovereign immunity:

> Subject to existing international agreements to which the United
> States is a party at the time of enactment of this Act, a foreign state
> shall be immune from the jurisdiction of the courts of the United
> States and of the States except as provided in sections 1605-1607
> of this chapter.

The jurisdictional immunity in § 1604 is unqualified; if none of the specific exceptions in

§§ 1605-1607 applies, there is no subject matter jurisdiction. *Amerada Hess*, 488 U.S. at 434-39;

*Belize Soc. Dev.*, *Ltd. v. Government of Belize*, 794 F.3d 99, 101 (D.C. Cir. 2015).[1]

The Federal Government of Nigeria is indisputably a foreign state for purposes of the

FSIA.  *See* 28 U.S.C. § 1603(a); *Adler v. Federal Republic of Nigeria*, 107 F.3d 720, 723 (9th

Cir. 1997) ("The Federal Republic of Nigeria is a foreign state as defined in 28 U.S.C. § 1603.").

Nigeria's Debt Management Office is also a part of the Nigerian state.  An entity is

considered a part of a foreign state if it is an integral part of its government's political structure

---

[1] For present purposes, only § 1605 sets forth exceptions to immunity where the foreign sovereign is a defendant.
Section 1606 of the FSIA covers only the quantum of damages that may be awarded against a foreign sovereign, and
§ 1607 concerns counterclaims against foreign sovereigns that have initiated lawsuits in the U.S. courts.  Neither
applies in this action.

and performs core governmental functions.  As the D.C. Circuit has held, where an entity is

"bound up with the structure of the state" it "must in all cases be considered as the foreign state

itself rather than a separate agency or instrumentality of the state."  *Transaero, Inc. v. La Fuerza*

*Aerea Boliviana*, 30 F.3d 148, 153, 153 (D.C. Cir. 1994) (internal quotation omitted).  An entity

performs core governmental functions when the functions it carries out are governmental rather

than commercial in nature.  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir.

2003) ("[I]f the core functions of the entity are governmental, it is considered the foreign state

itself; if commercial, the entity is an agency or instrumentality of the foreign state.").

The Debt Management Office was established by Nigeria's enactment of the Debt

Management Office Establishment Act (2003) ("DMO Act") to centrally coordinate the

management of Nigeria's sovereign debt.[2]  Section 7 of the DMO Act provides:

> The Office shall have the power to— (a) issue and manage Federal
> Government loans publicly issued in Nigeria upon such terms and
> conditions [as] may be agreed between the Federal Government
> and the Office; (b) issue, from time to time, guidelines for the
> smooth operation of the debt conversion programme [of] the
> Federal Government; and (c) do such other thins [sic] which in the
> opinion of the Board relate to the management of the external
> debts of the Federal Government.

The Debt Management Office is thus tasked with the core governmental function of

issuing, managing, and monitoring Nigeria's public debt on behalf of the Government of Nigeria.

It is also inextricably bound up with the political structure of the Nigerian state.  For example,

the Debt Management Office is overseen by a supervisory board composed of senior

governmental officials, including the Vice President of the Federal Republic of Nigeria, the

Minister of Finance, the Attorney General, the Chief Economic Advisor to the President, the

---

[2] Under Sections 1-2 of the DMO Act, the statute was "deemed to have come into force on 1st August, 2000."  A
copy of the DMO Act is attached hereto as Exhibit A.

Governor of the Central Bank of Nigeria, and the Accountant-General. The Director-General of the Debt Management Office is appointed by the President on the recommendation of the board. DMO Act, Sec. 5, 9(1). Further, all external loans obtained by the Debt Management Office must "be approved or obtained by the Minister [of Finance]" and presented to and approved by the National Assembly. DMO Act, Sec. 21(1).

The Debt Management Office therefore must be considered part of the state of Nigeria. *Garb v. Republic of Poland*, 440 F. 3d 579, 595 (2d Cir. 2006) (relying on *Transaero* to hold that Poland's Ministry of Treasury is "an integral part of Poland's political structure" as its core function is to "hold and administer the property of the Polish state"); *Schansman v. Sberbank of Russ. PJSC*, No. 1:19-CV-02985 (ALC) (GWG), 2022 U.S. Dist. LEXIS 219959, at 9 (S.D.N.Y, 2022) (determining that the "Bank of Russia's core functions are predominantly governmental" because it is a "crucial market regulator within the Russian System" and "responsible for… protecting and ensuring the stability of the ruble") (internal citations omitted).

Nigeria's Attorney General and Minister of Justice is also immune under the FSIA. The Supreme Court has instructed that when a claim is brought against a foreign government official but a foreign state is the "real party in interest" the claim should be treated as being against the foreign state itself and thus falls under the FSIA. *See Samantar v. Yousuf*, 560 U.S. 305, 325 (2010) ("[I]t may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity" (citation omitted)). *See also, e.g.*, *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34 (D.D.C. 2013) (whether claims against

government officials are covered by the FSIA is determined by whether the foreign state is the "real party in interest").

Determining whether a foreign state is the real party in interest requires a court to examine whether a foreign government official is sued in his or her official capacity, and whether any damages that are awarded would be payable by the foreign state rather than by the government official personally. *See id.* Here, both inquiries confirm that Nigeria is the real party in interest. Plaintiffs do not assert that they are suing the Attorney General and Minister of Justice in his personal capacity. In fact, the Complaint does not even provide the name of the Attorney General and Minister of Justice.[3] Instead, it identifies him only by his official title. Further, Plaintiffs, in their own words, seek to enforce an alleged "Sovereign Wealth Instrument … backed by the Full Faith and Credit of the Federal Republic of Nigeria, which is also charged against the General Assets of the Federal Republic of Nigeria." D.E. 1, at 8.

Nigeria is therefore the real party in interest. As the U.S. District Court for the District of Massachusetts held in regard to claims that Plaintiff Edwards previously asserted against Nigeria's Attorney General and Minister of Justice, among other government officials, "the 'real party in interest' is plainly the foreign state of Nigeria" because, *inter alia*, the complaint "identifies the officials only by their official titles" and "the debts sought were owed by the Federal Government." *Iseghohi-Edwards v. Federal Government of Nigeria*, 2018 U.S. Dist. LEXIS 212827, at 6-7 (internal citations omitted). *See also, e.g.*, *Heping Li v. Keqiang Li*, No. 20-2008 (JMC), 2023 U.S. Dist. LEXIS 60329*, at 10 (D.D.C. 2023) (holding China to be the real party in interest because the Chinese governmental officials named as defendants were not

---

[3] Indeed, Abubakar Malami, the official who was Nigeria's Attorney General and Minister of Justice at the time that the Complaint was filed, no longer serves in that capacity. The office remains vacant as of the filing of this motion to dismiss.

alleged in the complaint to have "ordered, participated in, or profited from the expropriation of Plaintiffs' properties" but rather "each official is discussed solely in his capacity as representative of the government department they oversaw"); *Manouchehr Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013) (finding Iran to be the real party in interest where individuals were sued in their official capacity for actions taken by the Iranian regime).

> B.     **None of the FSIA's Exceptions to Immunity Allows the Court to Exercise Jurisdiction**

Since the Defendants are entitled to immunity under the FSIA, the Court can exercise jurisdiction only if one of the statute's enumerated exceptions to immunity applies.  None does.[4]

Plaintiffs attempt to rely on only one exception to immunity—the waiver exception found in § 1605(a)(1)—on the basis of the alleged promissory note.  In particular, the Complaint asserts there is "no sovereign immunity defense due to the nature of the instrument." D.E. 1, at 8. Plaintiffs' simultaneously filed motion for summary judgment (which the Court on May 1, 2023 denied without prejudice as premature) clarified that Plaintiffs rely exclusively on the FSIA's waiver exception.  D.E. 8, at 1-2 (arguing "the issuance of this Sovereign Wealth Instrument in United States Dollars as payment for a debt with due deference to the language contained therein, is an ***Explicit waiver of Sovereign Immunity or at a minimum an Implicit Waiver of Sovereign Immunity*** pursuant to Title 28, Section 1605 (a) (1) making it subject to the jurisdiction of courts of the United States or of the States") (emphasis in original).  The waiver exception, however, is manifestly inapplicable.

---

[4] The FSIA establishes a burden-shifting framework to determine whether a foreign state is immune from suit. *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  Under this framework, a foreign sovereign is entitled to a presumption of immunity and the "plaintiff bears an initial burden of production to show an exception to immunity…applies." *Owens v. Republic of Sudan*, 864 F.3d 751, 784 (D.C. Cir. 2017).  The foreign sovereign may then "challenge either the legal sufficiency or the factual underpinning of an exception [to sovereign immunity]." *Phoenix Consulting*, 216 F.3d at 40.

Section 1605(a)(1) of the FSIA permits courts to exercise jurisdiction over a foreign sovereign where:

> the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver….

A "foreign state explicitly waives its sovereign immunity in a treaty or contract only if it 'clearly and unambiguously' agrees to suit." *Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021) (quoting *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002)).  The foreign sovereign must have intended to waive its immunity for the waiver exception to apply.  *Id.* 240.  Nothing in the promissory note, however, even hints at such an intent.  Indeed, the note is silent as to immunity from suit, let alone manifesting an intention to waive immunity from suit in the United States.  This is fatal to Plaintiffs' waiver argument. *See Amerada Hess*, 488 U.S. at 442-43 (a foreign sovereign does not waive immunity "by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States").

Nor have the Defendants waived immunity by implication.  There is "substantial precedent" that the FSIA's implied waiver exception must be "narrowly construed."  *TIG Ins. Co. v. Republic of Argenina*, No. 18-mc-0129 (DLF), 2022 U.S. Dist. LEXIS 151663, at 13 (D.D.C. 2022).  The statute's legislative history indicates that there are "only three circumstances" where a foreign state waives immunity by implication: (1) executing a contract containing a choice-of-law clause designating the laws of the United States as applicable; (2) filing a responsive pleading without asserting sovereign immunity; and (3) agreeing to submit a dispute to arbitration in the United States.  *Ivanenko*, 995 F.3d at 239; *TIG Ins. Co*, 2022 U.S. Dist. at 12-13 (D.D.C. 2022) (citing *Inversora Murten, S.A. v. Energoprojekt Holding Co.*, 671

F. Supp. 2d 152, 155 (D.D.C. 2009) (quoting *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d at 1161). These "narrow examples" of implied waiver have in common "a nexus with legal proceedings in the United States, and do not suggest a congressional intent that the list of potential waivers be extended." *Sampson v. Fed. Republic of Germany & Claims Conf.*, 250 F.3d 1145, 1154 (7th Cir. 2001).

None of the implied waiver scenarios applies here. The promissory note does not contain a choice-of-law clause designating the laws of any U.S. state. To the contrary, the promissory note states that it is governed by the laws of Nigeria. *See* D.E. 1-1, Exhibit A, at 1; *Atl. Tele-Network, Inc. v. Inter-American Dev. Bank*, 251 F. Supp. 2d 126, 133 (D.D.C. 2003) (holding waiver of immunity is only applicable to courts in the jurisdiction specified in contractual choice of forum clause). Nor has Nigeria submitted a responsive pleading without asserting sovereign immunity or agreed to submit to arbitration in the United States. The implied waiver exception therefore does not apply. *See, e.g.*, *SI Group Consort Ltd. v. Ukraine, Ivano-Frankivsk State Admin*, No. 15 CV 3047-LTS, 2017 WL 398400, at *2 (S.D.N.Y. Jan. 30, 2017).

II.     **Even if Nigeria Is Not the Real Party in Interest, the Claim Against Nigeria's Attorney General and Minister of Justice Should Still Be Dismissed**

As demonstrated above, Plaintiffs' claim against Nigeria's Attorney General and Minister of Justice is governed by the FSIA because Nigeria is the real party in interest. However, even if this were not so, the claim against him must still be dismissed because the Court lacks personal jurisdiction. Further, the Attorney General and Minister of Justice is immune from suit under the common law of foreign official immunity.

A.     **There is No Personal Jurisdiction Over Nigeria's Attorney General and Minister of Justice**

The Court may not exercise personal jurisdiction over nonresident defendants who lack the constitutionally required "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945); *Williams v. Romarm S.A.,* 756 F.3d 777, 783-784 (D.D.C. 2014). To

satisfy the "minimum contacts" test for purposes of general jurisdiction under the District of

Columbia long-arm statute and the U.S. Constitution, the nonresident defendant must have

contacts with the District of Columbia that "are so 'continuous and systematic' as to render [him]

essentially at home in the... State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Betz v. Aidnest*,

No. 1:18-cv-00292 (KBJ/GMH), 2018 U.S. Dist. LEXIS 183982, at 11 (D.D.C. 2018).

In the absence of "substantial" and "continuous and systematic" activities within the

District of Columbia, a court may only exercise specific jurisdiction over a person who acts

directly or through an agent, as to a claim for relief arising from the person's:

> (1) transacting any business in the District of Columbia; (2)
> contracting to supply services in the District of Columbia; (3)
> causing tortious injury in the District of Columbia by an act or
> omission in the District of Columbia; [or] (4) causing tortious
> injury in the District of Columbia by an act or omission outside the
> District of Columbia if he [i] regularly does or solicits business, [ii]
> engages in any other persistent course of conduct, or [iii] derives
> substantial revenue from goods used or consumed, or services
> rendered, in the District of Columbia.

*Aidnest*, 2018 U.S. Dist. at 13-14 (D.D.C. 2018); D.C. Code § 13-423(a)(1)-(4).

Plaintiffs fail to establish either general or specific jurisdiction because the Complaint

does not allege that the Attorney General and Minister of Justice has any contacts with the

District of Columbia or has met any of the requirements for specific jurisdiction. To the extent

the Complaint purports to assert factual allegations against the Attorney General and Minister of

Justice, they all involve alleged conduct in Nigeria. *See Walden v. Fiore*, 571 U.S. 281, 291

(2014). Personal jurisdiction is therefore lacking. *UAB Skyroad Leasing v. OJSC Tajik Air*, No.

21-7015, 2022 U.S. App. LEXIS 16977, at 6 (D.C. Cir. 2022) ("[G]iven that Skyroad concedes

Tajik Air lacks minimum contacts with the United States, the district court did not err in finding

that it could not exercise personal jurisdiction over Tajik Air consistent with the Due Process Clause."); *African Growth Corporation v. Republic of Angola*, No. 17-2469 (BAH), 2019 U.S. Dist. LEXIS 120571, at 26 (D.C.C. 2019) (determining that plaintiff failed to plead "facts that could establish personal jurisdiction" over Defendants by arguing that Defendants "purposefully directed at [the] District" the "marketing of short-term residential rentals").

B. **Nigeria's Attorney General and Minister of Justice is Entitled to Common Law Foreign Official Immunity**

The claim against the Attorney General and Minister of Justice must also be dismissed because he is entitled to common law foreign official immunity for actions taken in performance of his official duties. *See Samantar*, 560 U.S. 305 at 322 (foreign officials may be entitled to common law immunity for acts undertaken in course of their official duties); *Doe v. Buratai*, 318 F. Supp. 3d 218, 230 (D.D.C. 2018).

Common law foreign official immunity applies to the claim against the Attorney General and Minister of Justice. The Complaint only names him in connection with the performance of his official duties for the Nigerian Government. There are no allegations against the Attorney General and Minister of Justice that extend beyond his official capacity. Since the claim against him concerns his official public acts, he is entitled to common law immunity. *See, e.g.*, *Miango v. Democratic Republic of* Congo, No. 15-1265 (ABJ), 2020 U.S. Dist. LEXIS 113722, at 18 (D.D.C 2020) (finding that members of DRC's security forces who allegedly beat plaintiffs were acting in their official capacity and thus entitled to foreign official immunity); *Dogan v. Barak*, No. 15-08130, 2016 U.S. Dist. LEXIS 142055, at *26-30 (C.D. Cal. Oct. 13, 2016) (dismissing claims against Defense Minister on grounds of foreign official immunity for the alleged planning of a naval operation).

III.     **The Complaint Must Be Dismissed Under the Doctrine of *Forum Non Conveniens***

Even if the Court had jurisdiction over Plaintiffs' claims against Nigeria (it does not), the Court should nonetheless dismiss the action under the doctrine of *forum non conveniens*.  In deciding whether to dismiss on *forum non conveniens* grounds, the Court must determine "(1) whether an adequate alternative forum for the dispute is available, and if so, (2) whether a balancing of the private and public interest factors strongly favors dismissal." *Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 192 (D.D.C 2018) (citing *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).  "[A] strong tilt towards [Nigeria] in [either] the private interest factors or the public interest factors counsels towards dismissal." *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 558 F. Supp. 2d 21, 26-27 (D.D.C. 2008), *aff'd* 616 F.3d 568 (D.C. Cir. 2010).  Here, all factors tilt decidedly towards Nigeria.

A.     **Nigeria Is an Adequate Forum**

Nigeria is an adequate alternative forum for Plaintiffs' claims.  An alternative forum is ordinarily adequate if "the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute." *Tatneft*, 301 F. Supp. 3d at 192 (citing *Piper Aircraft Co.*, 454 U.S. at 255.  Here, there is no dispute that Defendants are amenable to process in Nigeria or that Nigerian courts permit adjudication of disputes concerning promissory notes.

B.     **The Private Interest Factors Weigh in Favor of Dismissal**

The private interest factors favor dismissal.  Those factors are: "(1) the relative ease of access to sources of proof; (2) the availability of process for compelling unwilling witnesses; (3) the cost to obtain attendance of willing witnesses; (4) the need to inspect the premises, if

appropriate; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Hueter v. Kruse*, 610 F. Supp. 3d 60, 69 (D.D.C. 2022).

Factor (1) weighs heavily in favor of dismissal.  "Because [Plaintiffs'] claims arose out of actions occurring in" Nigeria, specifically the issuance of an alleged promissory note by the Nigerian Government, "access to sources of proof would be much easier if the case were heard in [Nigeria] rather than Washington, D.C." *BPA Int'l, Inc. v. Sweden*, 281 F. Supp. 2d 73, 86 (D.D.C. 2003).

Factors (2) and (3) also demonstrate that Nigeria is the more appropriate forum.  To the extent that witnesses may be required to litigate the legality and enforceability of the putative promissory note, most if not all such witnesses, as well as other relevant evidence, are located in Nigeria and likely "beyond the reach of this Court's compulsory process." *BPA Int'l, Inc.*, 281 F. Supp. 2d at 86.  *See also MBI Grp., Inc.*, 558 F. Supp. 2d at 33; *Irwin v. WWF, Inc.*, 448 F. Supp. 2d 29, 35 (D.D.C. 2006) ("The availability of process for unwilling witnesses is also a primary concern to the Court…. [T]here is no evidence that any of these potential witnesses reside in the United States.  None of these individuals are subject to subpoena power of this or any other United States court, and none can be compelled to attend trial[.]").  In addition, due to travel logistics, it would be significantly less costly for most witnesses to attend trial and give evidence in Nigeria, further favoring dismissal on *forum non conveniens* grounds.  *Irwin*, 448 F. Supp. 2d at 35 ("the cost of bringing witnesses to Washington, D.C. would be significant").[5]

Factor (5) likewise favors litigating in Nigeria.  A Nigerian court is overwhelmingly more likely to be able to effectively enforce any relief granted regarding this dispute, particularly

---

[5] Factor (4) does not apply here because there is no need for inspection of premises in an action concerning a promissory note.

because it has jurisdiction over the Federal Republic of Nigeria, the Debt Management Office, and the Attorney General and Minister of Justice. *See Fluoroware, Inc. v. Dainichi Shoji K.K.*, 999 F. Supp. 1265, 1273 (D. Minn. 1997) (citing *McDonald's Corp. v. Bukele*, 960 F. Supp. 1311, 1319 (N.D. Ill. 1997)) (favoring dismissal because "the Japanese courts would need to become involved in this matter in order for the Plaintiff to obtain complete relief by enjoining the Defendant's conduct in Japan, and it is uncertain whether they would enforce this Court's ruling in the instant case").

      C.     **The Public Interest Factors Weigh in Favor of Dismissal**

      The public interest factors also favor dismissal. Those factors are: "(1) administrative difficulties caused by foreign litigation congesting local court dockets; (2) local interest in having localized controversies decided at home; (3) imposing jury duty on residents of a jurisdiction having little relation to the case; and (4) avoiding unnecessary problems in choice-of-law and the application of foreign law." *Irwin*, 448 F. Supp. 2d at 35. Again, these factors point to Nigeria as the more appropriate forum.

      With respect to factor (1), "[t]he administrative difficulties of trying this case 'in a forum thousands of miles away from the majority of witnesses and the evidence are obvious.'" *Id.* at 35-36 (quoting *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 879 (5th Cir. 1987)). Here, those "difficulties [would] manifest themselves especially in … the lack of an adequate means to compel the participation of unwilling witnesses." *MBI Grp., Inc.*, 558 F. Supp. 2d at 34.

      In regard to factor (2), Nigeria has a strong "interest in having localized controversies decided at home." *Hueter v. Kruse*, 610 F. Supp. 3d 60, 70 (D.D.C. 2022). That interest is particularly compelling here because the dispute concerns the administration of public monies

and the lawfulness and validity of a promissory note alleged to have been issued by the Nigerian Government.[6]

Finally, public interest factor (4) favors adjudication in Nigeria because the Court lacks familiarity with Nigerian law, which governs the alleged promissory note. *MBI Grp., Inc.*, 558 F. Supp. 2d at 35. Moreover, the Court would need to consider and make determinations regarding the legal basis upon which the promissory note was issued and its validity, all questions that require application of Nigerian law. The Nigerian courts are in a far better position to make such determinations. *MBI Grp., Inc.*, 558 F. Supp. 2d at 35.

IV. **Plaintiffs Failed to Comply with the FSIA's Service Requirements**

The Complaint should also be dismissed under Federal Rule of Civil Procedure 12(b)(5) because Plaintiffs failed to serve Defendants in accordance with § 1608(a)(3) of the FSIA.

Section 1608(a) establishes the "exclusive procedures for service on a foreign state." *Transaero*, 30 F.3d at 154 (quoting H.R. Rep. No. 94-1487, at 24 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6623). Personal jurisdiction over a foreign sovereign exists only where there is both subject matter jurisdiction (that is, an exception to immunity applies) and service of process has been effected in accordance with § 1608 of the FSIA. *See* 28 U.S.C. § 1330(b); *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992).

Section 1608(a) provides:

> (a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

---

[6] Factor (3) does not apply here because actions against foreign sovereigns are not subject to jury trials. *See* 28 U.S.C. § 1330(a).

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

The methods prescribed for service under § 1608(a) must be pursued in a "descending order of preference." *Barot v. Embassy of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). This means that the moving party "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008); *Angellino v. Royal Family Al-Saud*, 681 F.3d 463, 466 (D.C. Cir. 2012). Neither a plaintiff's "substantial compliance" with the requirements of § 1608(a) nor a defendant's "actual notice" of the pertinent lawsuit obviates the need for strict compliance with the requirements of § 1608(a). *Transaero*, 30 F.3d at 154; *Barot*, 785 F.3d at 27.

Here, the only option that was available to Plaintiffs for effectuating service was the procedure set out in § 1608(a)(3).  This required the "clerk of the court" to send "a copy of the summons and complaint and a notice of suit" to the "head of the ministry of foreign affairs of the foreign state concerned."  28 U.S.C. § 1608(a)(3); *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 59- 60 (D.D.C. 2007).[7]

Plaintiffs did not comply with this required process.  The Proof of Service that Plaintiffs submitted states that, on April 26, 2023, a Nigerian attorney acting on their behalf "personally served a copy of the civil suit on the Office of the Honourable Attorney General and Minister of Justice."  D.E. 5, at 1-4.  On the same day, that Nigerian lawyer is also reported to have "personally served a copy of the civil suit on the Office of the Director General, Debt Management Office."  D.E. 5, at 5-6.  Plaintiffs' Proof of Service thus makes clear that they did *not* effectuate service on the head of Nigeria's Ministry of Foreign Affairs through a mailing by the clerk of the court, as § 1608(a)(3) mandates.

In the absence of proper service, the Court lacks personal jurisdiction.  Because, as explained above, there is no subject matter jurisdiction, the action should be dismissed without an opportunity to effect service under § 1608(a).  *See Alberti v. Empresa Nicaraguense de la Carne*, 705 F.2d 250, 253 (7th Cir. 1993).

## CONCLUSION

For the foregoing reasons, the Complaint's claims against Nigeria should be dismissed with prejudice.

---

[7] Service could not be made under § 1608(a)(1) because there is no "special arrangement" between Plaintiff and Nigeria.  Section 1608(a)(2) does not apply because Nigeria is not a signatory to "an applicable international convention on service of judicial documents."  Service under § 1608(a)(4) would only be available if service under §1608(a)(3) proved impossible.

Dated: June 26, 2023                        Respectfully submitted,


                                            FEDERAL GOVERNMENT OF NIGERIA,
                                            ATTORNEY GENERAL AND MINISTER OF
                                            JUSTICE OF NIGERIA, AND DEBT
                                            MANAGEMENT OFFICE OF THE FEDERAL
                                            REPUBLIC OF NIGERIA

                                            By its attorneys,
                                            Andrew B. Loewenstein (D.D.C No. 7360014)
                                            /s/ Andrew Loewenstein
                                            FOLEY HOAG LLP
                                            Seaport West
                                            155 Seaport Boulevard
                                            Boston, MA 02210-2600
                                            Tel: 617-832-1000
                                            Fax: 617-832-7000
                                            aloewenstein@foleyhoag.com

                                            A. Tafadzwa Pasipanodya (D.D.C No. 994949)
                                            M. Arsalan Suleman (D.D.C No. 1602486)
                                            FOLEY HOAG LLP
                                            1717 K Street, NW
                                            Washington, DC 20006-5350
                                            Tel:  202-223-1200
                                            Fax: 202-785-6687
                                            tpasipanodya@foleyhoag.com
                                            asuleman@foleyhoag.com

                                            *Attorneys for the Federal Government of Nigeria*

## **Certificate of Service**

I, Andrew Loewenstein, certify that on June 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record registered to receive notices of electronic filing, and I caused to be sent a paper copy by U.S. Mail to *pro se* Plaintiff Ted Iseghohi Edwards at 31 River Road, Andover, MA 01810.

As *pro se* Plaintiff Boston Legal Partners Corporation has not provided a separate address, in an abundance of caution, I caused to be sent by U.S. mail a paper copy of the foregoing to 10 Overlook Ridge Drive, Suite 614, Malden, MA 02148, which is the address provided by the Corporate Division of the Secretary of the Commonwealth of Massachusetts for Boston Legal Partners Corporation.

/s/ Andrew Loewenstein
Andrew Loewenstein
