**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| EDWARDS et al., | |
| Plaintiff, | |
| v. | Civil Action No. 23-1129 (CKK) |
| FEDERAL REPUBLIC OF NIGERIA et al., | |
| Defendant. | |

**MEMORANDUM OPINION**
(March 12, 2026)

Plaintiffs are parties to an agreement whereby the Federal Republic of Nigeria agreed to render payment on ten (10) promissory notes over a ten-year period. Plaintiffs claim that the Federal Republic of Nigeria has refused to make payment on these notes and ask the Court to enforce their agreement. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court concludes that it lacks subject matter jurisdiction over Plaintiffs' claims. Accordingly, the Court shall **GRANT** Defendants' [12] Motion to Dismiss.

**I. BACKGROUND**

**A.  Factual Background**

In 2011, Dr. Ted Iseghohi Edwards was retained to provide legal representation to hundreds of Local Government Councils of Nigeria in a suit against the Federal Republic of Nigeria ("Nigeria"). Edwards Aff., Dkt. No. 16-4 ¶ 1. Dr. Edwards's legal fee was fixed at 10% of any recovery. *Id*. ¶ 2. In 2013, Dr. Edwards and his clients won a judgment of $3,189,000,000 against

---

[1] The Court's consideration has focused on Plaintiffs' Complaint ("Compl."), Dkt. No. 1; Defendants' Memorandum in Support of their Motion to Dismiss ("Defs.' Mem."), Dkt. No. 12-1; Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n"), Dkt. No. 16; and Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Defs.' Reply"), Dkt. No. 20. The Court has also considered all of the exhibits attached to these filings.

Nigeria. *Id*. Following this award, a Nigerian court directed Nigeria to deduct $318,000,000 from the judgment to pay to Dr. Edwards. *Id*. ¶ 3.

Dr. Edwards struggled to collect his fees in Nigeria. *Id*. ¶ 6. So, in April 2018, Dr. Edwards brought a "Foreign Judgment Enforcement Suit" in the District of Massachusetts against Nigeria. *Id*.; Defs.' Mem., at 1. But the district court dismissed his action in May 2018 for lack of subject matter jurisdiction and failure to state a claim. *See Iseghohi-Edwards v. Federal Government of Nigeria*, No. 18-mc-91146, 2018 U.S. Dist. LEXIS 95299 (D. Mass., May 11, 2018). Dr. Edwards immediately filed another suit in the District of Massachusetts against Nigeria and various Nigerian governmental entities. *See* Defs.' Mem., at 1. But, again, the district court dismissed his action, finding that "all defendants [were] immune from suit under the FSIA." *Edwards v. Fed. Gov't of Nig.*, Civil Action No. 18-11133-FDS, 2018 U.S. Dist. LEXIS 212827, at *12 (D. Mass. Dec. 18, 2018).

Following these failed attempts to enforce his award from the Nigerian judgment in the District of Massachusetts, Dr. Edwards and Nigeria negotiated and "reached a resolution regarding payment." Pls.' Opp'n, at 1. Pursuant to this resolution, Nigeria agreed to issue to Dr. Edwards ten (10) Promissory Notes, each in the amount of $15,900,000 (i.e., a total of $159,000,000). *Id*. On September 27, 2021, Nigeria's Debt Management Office ("DMO") issued these Promissory Notes in Dr. Edwards's favor on behalf of Nigeria. Compl. at 7.

The Promissory Notes were scheduled to mature individually on an annual basis for the following ten years, with the first Note maturing on October 15, 2022. *Id*. The Notes were "backed by the full faith and credit of the Federal Government of Nigeria," "charged upon the general assets of Nigeria," and "governed by the Laws of the Federal Republic of Nigeria." October 15, 2022, Promissory Note, Dkt. No. 1-1. They were also "negotiable and transferable." *Id*. But whether

they were transferred or not, the Notes provided that they "must be submitted to the Central Bank of Nigeria for payment." *Id*.

At some point after the Promissory Notes were issued in his favor, Dr. Edwards assigned the Notes to Boston Legal Partners, Inc., a Massachusetts corporation. Edwards Aff. ¶ 13. On October 5, 2022, the DMO wrote to Mr. Edwards requesting that Mr. Edwards or his assignee submit to the DMO the original Promissory Note scheduled to mature on October 15, 2022, along with "full bank account details" no later than October 7, 2022. Ex. B, Dkt. 1-1. Boston Legal Partners provided the DMO with the original Note on either October 6 or October 7. *Compare* Compl. at 7 ¶ 6 (stating that Boston Legal Partners submitted the original Note on October 7) *with* Pls.' Opp'n, at 3 (stating that Boston Legal Partners submitted the original Note on October 6). But it is not clear which "bank account details" were submitted to the DMO. Plaintiffs' Complaint states that Boston Legal Partners provided the DMO with "clear payment instructions into the account of Dr. Ted Iseghohi Edwards," while Plaintiffs' Opposition to Defendants' Motion to Dismiss states that Boston Legal Partners "designated Bank of America N.A. in New York for the payment." *Compare* Compl. 7–8 ¶ 6 *with* Pls.' Opp'n, at 3.

Plaintiffs did not receive payment on the first Promissory Note. After waiting six months, Plaintiffs retained counsel in Nigeria to issue a seven-day demand letter for payment against Nigeria. Edwards Aff. ¶ 19. In response to that letter, the DMO informed Plaintiffs that it was "awaiting directives from the authorities and will revert to you as may be appropriate." *Id*. ¶ 20. Plaintiffs had not received payment as of the filing of this suit.

## B. Procedural History

Plaintiffs Dr. Edwards and Boston Legal Partners brought this suit against Defendants Nigeria, Nigeria's Attorney General and Minister of Justice, and Nigeria's DMO on April 24, 2023. *See* Compl. Plaintiffs sought payment of the first Promissory Note and immediately moved

for summary judgment.  *See* Dkt. No. 3.  The Court denied this motion as premature because none of the Defendants had been served yet.  *See* May 1, 2023, Min. Order.

Defendants were eventually served and moved to dismiss Plaintiffs' Complaint.  *See* Defs.' Mot., Dkt. No. 12.  Defendants argue that the Complaint should be dismissed because: (i) the Court lacks jurisdiction over all Defendants under the FSIA; (ii) the Court lacks personal jurisdiction over Nigeria's Attorney General and Minister of Justice; and (iii) the doctrine of *forum non conveniens* warrants dismissal.  *See* Defs.' Mem.  Defendants' motion is now ripe.  *See* Pls.' Opp'n, Dkt. No. 16; Defs.' Reply, Dkt. No. 20.

## II. LEGAL STANDARD

Where, as here, a defendant contests only the legal sufficiency of jurisdictional claims, "the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief." *Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 711–12 (D.C. Cir. 2022) (quoting *Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1139 (D.C. Cir. 2020)).

The Foreign Sovereign Immunities Act ("FSIA") "supplies the ground rules for 'obtaining jurisdiction over a foreign state in the courts of this country.'" *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 175–76 (2021) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)).  The FSIA provides foreign states and their agencies or instrumentalities with "presumptive immunity from suit in the United States." *Republic of Hungary v. Simon*, 604 U.S. 115, 121 (2025) (citing 28 U.S.C. § 1604).  Accordingly, "unless a specified exception applies," a federal court lacks subject-matter jurisdiction over a claim against a foreign state or its agency or instrumentality. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citation omitted).  Under the FSIA, a foreign state "bears the burden of proving that the

4

plaintiff[s'] allegations do not bring [their] case within a statutory exception to immunity." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

### III. ANALYSIS

The Court concludes that it lacks subject matter jurisdiction over Plaintiffs' action. The Defendants are presumed to be immune from suit in the United States under the FSIA. Plaintiffs attempt to abrogate Defendants' sovereign immunity through three different exceptions. But Plaintiffs' pleadings do not satisfy the requirements of these exceptions. Accordingly, the Court shall **GRANT** Defendants' motion to dismiss.

### A. All three Defendants are presumptively immune from the Court's jurisdiction.

"Under the FSIA, a foreign state is presumptively immune from the jurisdiction of the United States Courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488-89 (1983)). A "foreign state," as used in the FSIA, includes "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

Plaintiffs bring this action against the Federal Republic of Nigeria ("Nigeria"), the Attorney General and Minister of Justice of Nigeria (the "AG"), and the Debt Management Office of Nigeria (the "DMO"). Plaintiffs do not dispute that Nigeria is a "foreign state" entitled to the presumption of immunity under the FSIA. *See* Pls.' Opp'n, at 6; *see also Adler v. Federal Republic of Nigeria*, 107 F.3d 720, 723 (9th Cir. 1997) ("The Federal Republic of Nigeria is a foreign state as defined in 28 U.S.C. § 1603.").

Plaintiffs also appear to concede that the AG and the DMO are instrumentalities of Nigeria that are entitled to the presumption of immunity under the FSIA. *See* Pls.' Opp'n, at 22 (arguing that "Plaintiffs properly served the [AG] and [the DMO] as agency or instrumentality [sic] of the government pursuant to 28 U.S.C. §1608(b)(3)"). If Plaintiffs brought claims against specific officials at the AG or the DMO as individuals, then the common law regarding sovereign immunity

would displace the FSIA unless the Court determined that Nigeria was "the real party in interest." *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34 (D.D.C. 2013) (ABJ), aff'd, 764 F.3d 31 (D.C. Cir. 2014) (citing *Samantar v. Yousuf*, 560 U.S. 305, 324 (2010)) ("If the suit is against the official personally, then the common law regarding sovereign immunity applies, but if the state is 'the real party in interest,' then the suit should be treated as an action against the foreign state itself to which the FSIA would apply."). Plaintiffs, however, do not identify any specific individuals at the AG or the DMO against whom their action is brought. *See Edwards v. Fed. Gov't of Nig.*, Civil Action No. 18-11133-FDS, 2018 U.S. Dist. LEXIS 212827, at *7 (D. Mass. Dec. 18, 2018) (concluding that, in Plaintiffs' prior suit in the District of Massachusetts, "the 'real party in interest' [was] plainly the foreign state of Nigeria").

Accordingly, because Plaintiffs concede that the Defendants are a foreign state and two of its instrumentalities, the Court lacks subject matter jurisdiction over Plaintiffs' claims "unless a specified exception applies." *Nelson*, 507 U.S. at 355. Defendants' immunity stems from the FSIA, regardless of whether Plaintiffs seek relief from individuals at the AG or the DMO.

**B. Plaintiffs do not adequately plead an exception to the Defendants' presumptive immunity.**

Plaintiffs argue that Defendants' immunity from suit is abrogated by either (i) the FSIA's waiver exception, (ii) the FSIA's commercial activity exception, or (iii) the FSIA's expropriation exception. The Court concludes that Plaintiffs' pleadings do not fit within any of these exceptions.

1.    The FSIA's Waiver Exception Does Not Apply

As Defendants' point out, the FSIA's waiver exception is the only exception that Plaintiffs identified prior to filing their Opposition to Defendants' Motion to Dismiss. *See* Defs.' Reply, at 4–5. The FSIA's waiver exception provides that

> A foreign state shall not be immune from the jurisdiction of courts of the United
> States or of the States in any case . . . in which the foreign state has waived its

6

> immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

28 U.S.C. § 1605(a)(1).

A foreign state explicitly waives its sovereign immunity in a treaty or contract only if it "clearly and unambiguously" agrees to suit in the United States. *Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021) (quoting *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002)).  Regarding waivers by implication, the D.C. Circuit "has recognized that a foreign state implicitly dispenses with its immunity in only three circumstances: by (1) executing a contract containing a choice-of-law clause designating the laws of the United States as applicable; (2) filing a responsive pleading without asserting sovereign immunity; or (3) agreeing to submit a dispute to arbitration in the United States." *Id*. (citing *World Wide Minerals*, 296 F.3d at 1161 n. 11).  The "touchstone of the waiver exception" is "that the foreign state have *intended* to waive its sovereign immunity." *Id*. at 240 (quoting *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999)) (emphasis added).

Defendants did not explicitly waive their immunity from suit in the United States.  The Promissory Notes and other relevant documentation do not mention immunity from suit.  A foreign state or its instrumentality does not "waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442–43 (1989).  Plaintiffs do not bring any other allegations to suggest that Defendants intended to waive their immunity.

Defendants also did not implicitly waive their immunity from suit in the United States.  First, Defendants did not execute a contract that designated the laws of the United States as

applicable. *Ivanenko*, 995 F.3d at 239. Rather, the Promissory Notes designed the laws of Nigeria as applicable. Second, Defendants did not file a responsive pleading without asserting sovereign immunity, as evidenced by the Court's current discussion. *Ivanenko*, 995 F.3d at 239. Finally, Defendants did not agree to submit to arbitration in the United States. *Id*. Accordingly, the Defendants did not implicitly waive their sovereign immunity under the FSIA.

Because the Defendants did not explicitly or implicitly waive their sovereign immunity under the FSIA, the FSIA's waiver exception does not establish the Court's subject matter jurisdiction.

### 2.  The FSIA's Commercial Activity Exception Does Not Apply

Plaintiffs first raised the FSIA's commercial activity exception in their Opposition to Defendants' Motion to Dismiss. While "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss," any attempt at amendment is harmless, as the Court determines that it does not have jurisdiction over the Defendants under the FSIA's commercial activity exception. *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (RMC).

> The FSIA's commercial activity exception provides that
>
> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

The commercial activity exception "contains three clauses," each of which "establishes an independent basis for asserting jurisdiction over a foreign state based on its commercial activities." *Ivanenko*, 995 F.3d at 238. Plaintiffs rely on the third clause, which permits a suit to proceed

8

against a foreign state if it is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Known as the "direct effect" clause, it applies if three requirements are met: (1) "the lawsuit must be based upon an act that took place outside the territory of the United States"; (2) "the act must have been taken in connection with a commercial activity"; and (3) "the act must have caused a direct effect in the United States." *Id*. (quoting *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888–89 (D.C. Cir. 2006)).

Plaintiffs have not shown that Defendants failure to fulfil the first Promissory Note "caused a direct effect in the United States." In the D.C. Circuit, "direct effect cases involving alleged breaches of contract have turned on whether the contract in question established the United States as a place of performance." *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 38 (D.C. Cir. 2014). "By definition, breaching a contract that establishes the United States as a place of performance will have a *direct* effect here, whereas breaching a contract that establishes a different or unspecified place of performance can affect the United States only *indirectly*." *Id*. (emphasis in original). In other words, the D.C. Circuit has drawn "a very clear line: For purposes of clause three of the FSIA commercial activity exception, breaching a contract that establishes or necessarily contemplates the United States as a place of performance causes a direct effect in the United States, while breaching a contract that does not establish or necessarily contemplate the United States as a place of performance does not cause a direct effect in the United States." *Odhiambo*, 764 F.3d at 40.

For example, in *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83 (D.C. Cir. 2005), the D.C. Circuit held that an alleged breach of contract did not create a direct effect in the United States because the underlying contract included "no agreement—express or implied—that [the

9

plaintiff] was to be paid in the United States." *Peterson*, 416 F.3d at 90–91.  The Circuit reached this conclusion even though the plaintiff "was in the United States at the time of the asserted breach, and even though the Court assumed that Saudi government 'understood' as much." *Odhiambo*, 764 F.3d at 39 (quoting *Peterson*, 416 F.3d at 90–91).  A "pay wherever you are arrangement," explained the Circuit, "does not suffice to create a direct effect in the United States." *Id.* (citation modified).

Plaintiffs do not satisfy the direct effects test because the Promissory Notes[2] do not establish the United States as the place of performance.  The Notes are governed by Nigerian law, and Nigerian law dictates that all payments on promissory notes be made at the Central Bank in Lagos.  Defs.' Reply, at 9.  The "mere fact" that the Promissory Notes are to be paid out in dollars "does not show that the notes 'necessarily contemplate' performance <u>in</u> the United States—the U.S. dollar is a commonly used currency the world over." *Friedman*, 464 F. Supp. 3d at 65 (emphasis in original).  Furthermore, the status of Plaintiffs or their designees as U.S. citizens alone is insufficient, as "harm to a U.S. citizen, in and of itself, cannot satisfy the direct effect requirement." *Cruise Connections Charter Management 1, LP v. Attorney General of Canada*, 600 F.3d 661, 665 (D.C. Cir. 2010).  Finally, Plaintiffs' post-execution decision to use a New York bank account does not establish a direct effect in the United States because it was not designated as the place of payment when the Promissory Notes were executed.  *See Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1141 (D.C. Cir. 2020).

Accordingly, because Defendants' alleged violation of the Promissory Note did not have a direct effect on the United States, the Court does not have subject matter jurisdiction under the FSIA's commercial activity exception.

---

[2] Promissory notes are treated as contracts under the direct effects test.  *See Friedman v. Gov't of Abu Dhabi, U.A.E.*, 464 F. Supp. 3d 52, 65 (D.D.C. 2020) (JDB).

### 3.    The FSIA's Expropriation Exception Does Not Apply

Like the commercial activity exception, Plaintiffs invoke the expropriation exception for the first time in the Opposition to Defendants' Motion to Dismiss.  The expropriation exception provides that

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3).

To abrogate Defendants' immunity under the expropriation exception, Plaintiffs' allegations "must make out a *legally valid* claim that a certain kind of right is at issue (property rights) and that the relevant property was taken in a certain way (in violation of international law)." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (emphasis added).  A "nonfrivolous, but ultimately incorrect, argument" or just a "good argument" is "not sufficient." *Id*.  Plaintiffs must also plausibly allege that the relevant property, or any property exchanged for that property, is either "present in the United States in connection with a commercial activity carried on in the United States by the foreign state," or "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."  28 U.S.C. § 1605(a)(3).

Plaintiffs' allegations do not satisfy the requirements of the expropriation exception because they do not raise an issue of property taken in violation of international law.  To show that property has been taken in violation of international law, Plaintiffs must plausibly allege that Defendants violated either an "express international agreement, such as a treaty," or "customary

international law." *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 743 F. App'x 442, 449 (D.C. Cir. 2018). Plaintiffs do not identify any express international agreements relevant to their claims. Furthermore, Plaintiffs have not brought any allegations that rebut Defendants' showing that, under customary international law, "[t]he mere refusal to pay a debt based on contract unaccompanied by other government measures is not expropriatory," just as a "mere denial to pay a liability is not expropriatory." Defs.' Reply, at 13–14.

Furthermore, Plaintiffs' allegations do not satisfy the domestic takings rule, which "assumes that what a country does to property belonging to its own citizens within its own borders is not the subject of international law." *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 176 (2021). Plaintiff Edwards held himself out as a Nigerian national to the Nigerian courts. *See* Defs.' Reply, at 14. But even if this a case involving dual nationality, the domestic takings rule would still apply. This determination involves a fact-based inquiry where courts consider "matters such as the relationship between the national and the state which allegedly expropriated the property, how the national—through his words and conduct—characterized himself, and whether the state considered its national as one of its own or as a foreign national." *Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1323 (11th Cir. 2018). Plaintiffs' allegations show that their action arises out of a judgment by a Nigerian court, and in coming to an agreement for the payment of this judgment, Dr. Edwards held himself out to the Nigerian government as a Nigerian citizen. These allegations strongly suggest that the domestic takings rule would bar Plaintiffs' use of the expropriation exception even if Dr. Edwards had dual citizenship.

At best, Plaintiffs' allegations give rise to the inference that Defendants' conduct did not violate international law, while at worst, they give rise to the inference that international law would not apply to Defendants conduct. Accordingly, because Plaintiffs have not made a "legally valid

12

claim" that their property was taken in violation of international law, they cannot use the expropriation exception to abrogate Defendants' immunity from suit in the United States. *Helmerich & Payne Int'l Drilling Co.*, 581 U.S. at 174.

## IV. CONCLUSION

Dr. Edwards executed an agreement with the Nigerian government for payment relating to a judgment entered by the Nigerian courts against the Nigerian government. Dr. Edwards held himself out as a Nigerian citizen when executing this agreement. And the agreement stipulates that all payments are to be made in Nigeria. Accordingly, while it appears that the Nigerian government is not fulfilling its side of the bargain, this Court concludes, like two other district courts did before it, that it lacks subject matter jurisdiction over the claims of Dr. Edwards and his assignees.

For the foregoing reasons, it is hereby **ORDERED** that Defendants' [12] Motion to Dismiss is **GRANTED**.

**SO ORDERED.**

**Dated:** March 12, 2026

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

13